UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 09-69-WOB

ANTHONY MOHRMEYER,                                              PLAINTIFF

VS.

WAL-MART STORES EAST, L.P.,                                     DEFENDANT

MEMORANDUM OPINION AND ORDER

On October 9, 2009, plaintiff moved for the imposition of evidentiary sanctions against the defendant based upon the defendant's alleged spoliation of evidence. The defendant has filed a response, to which plaintiff has filed a reply. For the reasons explained herein, plaintiff's motion will be **denied**.

**I. Background**

The underlying litigation arose from injuries plaintiff alleges to have sustained in a fall at the Wal-Mart Supercenter in Florence, Kentucky on March 3, 2008. Plaintiff alleges that his fall and injuries were the result of Wal-Mart's negligent failure to maintain the men's restroom.

The parties agree that Wal-Mart has a procedure in place concerning the inspection of the public restroom, whereby Wal-mart maintains a log or chart concerning maintenance and inspection. However, the maintenance log is a record that is not ordinarily preserved in the course of business, but is instead destroyed on a weekly basis. Wal-Mart states that it destroyed the log in the routine course of business on or about March 10, 2008, long before it became aware of the possibility of litigation.

## II. Analysis

In his motion, plaintiff argues that Wal-Mart had a duty to preserve the restroom maintenance log. In light of Wal-mart's failure to preserve the log, plaintiff requests an evidentiary presumption concerning the primary element of plaintiff's case: that "Wal-Mart negligently failed to keep the men's restroom in a reasonably safe condition for use by its customers."

Plaintiff argues that Wal-Mart had a duty to preserve the log immediately following the plaintiff's fall, because Wal-Mart "should have known" that the incident would result in litigation. Wal-mart did in fact preserve surveillance video from the day of incident, as well as written documents such as a Claim Form and Customer Statement. Wal-Mart employees attended to plaintiff immediately after his fall, called 911 and summoned an ambulance to transport him to the hospital. Plaintiff cites the unpublished case of *KCH Services, Inc. v. Vanaire, Inc.*, 2009 WL 2216601 (E.D. Ky., July 22, 2009) in which a district judge held that plaintiff was entitled to an adverse inference instruction to the jury at trial based upon the defendant's destruction of evidence prior to suit being filed.

Aside from the fact that an unpublished decision is not binding, the cited case is clearly distinguishable from the present one. In *KCH Services, Inc.*, the plaintiff and defendant were business competitors that previously had been involved in similar litigation over software. The president of plaintiff's company notified the president of defendant's company in October 2005 of his belief that defendant was again improperly using plaintiff's software. In response to that call, defendant immediately instructed his employees to delete software that had not been purchased and was not owned by defendant. Plaintiff filed suit a month later and sent an

2

evidence preservation letter to the defendant on December 14, 2005. In view of the totality of the circumstances including the past history of litigation and defendant's knowledge of their competitor's "willingness and ability to file suit," the district court held that plaintiff's telephone call in October 2005 should have put the defendants on notice that software issues may be relevant to future litigation. In fact, emails and other correspondence clearly showed that defendants were well aware of the possibility of litigation and took deliberate action to destroy computer records in response. *See Id.* at n.3 ("I am currently working with Keith to insure [sic] there is nothing left on the computers...."). Even after suit was filed a month later and after receiving the evidence preservation letter, defendant improperly continued to delete and overwrite electronic data including emails that should have been preserved.

The facts of this case are nothing like the facts presented in *KCH Services*. In this case the plaintiff's accident occurred on March 3, 2008. Plaintiff testified in his deposition that he did not even consider filing a lawsuit until a couple of months after the March accident - long after the records were destroyed in the ordinary course of business on March 10, 2008. Plaintiff did not file suit against Walmart until May 27, 2009, more than a year after the incident. Although Walmart employees summoned an ambulance on the day of the accident, and surveillance tapes of the restroom area and formal written records documenting the accident were preserved as a part of Walmart's policies and procedures, Walmart credibly argues that it had no reason to believe that suit would be forthcoming at any time prior to March 10, 2008 when the log was discarded. Unlike in *KCH Services,* Walmart received no telephonic or written warning of the possibility of suit prior to March 10, 2008. Nor was there any history of litigation between these litigants that would have made future litigation more likely. This court is not willing to

3

presuppose the likelihood of litigation for every slip and fall accident that occurs. The law does not and should not require businesses to preserve any and all records that may be relevant to future litigation for any accidental injury, customer dispute, employment dispute, or any number of other possible circumstances that *may* give rise to a claim months or years in the future, when there is absolutely no contemporaneous indication that a claim is likely to result at the time records are destroyed pursuant to a routine records management policy.

It is true that on the facts presented, Walmart did preserve some records pursuant to its internal policies relating to accidental injuries on premises. However, the restroom log is by its nature a temporary document that is routinely discarded on a weekly basis. Unlike *KCH Services*, I find no deliberate intent was involved in Walmart's failure to preserve this transient record. The possibility of litigation appears to have been wholly remote and speculative at the time the record was discarded. Even if the possibility of future litigation was less remote than in some slip and fall accidents due to the fact that an ambulance was summoned, Walmart's failure to preserve the log amounted to - at most -no more than ordinary negligence.

Plaintiff argues that negligence alone is a sufficient basis on which to impose an evidentiary sanction, citing *Louisville Gas and Elect. Co. v. Continental Field Sys., Inc.*, 420 F. Supp.2d 764 (W.D. Ky. 2005). However, the facts of that case also are clearly distinguishable. In *Louisville Gas and Electric*, plaintiff LG&E took possession of a piece of metal critical to the claim *after* litigation ensued, developed its case by having its expert test the metal during discovery, and then negligently discarded the evidence prior to the opposing party having had a chance to conduct its own testing. The court there was faced with the dilemma of fashioning an equitable remedy to "an evidentiary problem" because the plaintiff had tested (and was relying

upon) the critical evidence, whereas the defendant had been deprived of that opportunity. The court expressly noted that the plaintiff's mere negligence did not warrant "an occasion for sanctions or penalties." *Id.* at 767. In contrast to LG&E, Walmart discarded the log in the ordinary course of business nearly a year *before* litigation was filed. In this case, Walmart and the plaintiff are on equal footing from an evidentiary perspective.

Plaintiff also relies generally on *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008), where the Sixth Circuit held that with respect to electronically stored information ("ESI"): "It is beyond question that a party to civil litigation has a duty to preserve ESI when that party has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation." As authority, the Sixth Circuit cited other cases involving ESI, as well as *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Second Edition 11, 28 (The Sedona Conference Working Group Series, 2007).

It is debatable whether the principle recently articulated by the Sixth Circuit in *Goetz* concerning ESI can be generalized to establish a broader pre-litigation "duty to preserve" all evidence no matter how speculative future litigation may be. Even in *Goetz*, the court was careful to state that the pre-litigation duty applies only when a party has been put on notice that evidence is relevant to pending litigation, or when the party "should have known" that the evidence may be relevant to future litigation. A narrow reading of *Goetz* is strongly suggested by Rule 37(e), Fed. R. Civ. P., which states: "Absent exceptional circumstances, a court may not impose sanctions... on a party for failing to provide [ESI] lost as a result of the routine, good-faith operation of an electronic information system." By analogy, it would be improper for this

court to impose any type of sanction upon Walmart on the facts presented, where evidence was discarded as a result of its routine, good-faith records management practices long before Walmart received any notice of the likelihood of litigation.[1]

One small matter deserves additional comment. Plaintiff filed his motion without conducting any discovery whatsoever concerning when the log was destroyed, whether on a weekly basis in the routine course of business (as turned out to be the case) or otherwise. At the time plaintiff filed his motion and continuing to this date, plaintiff has presented no evidence other than the fact that an accident occurred on March 3, 2008 that Walmart had any reason to believe when the log was destroyed (a date unknown when the spoliation motion was filed) that litigation was likely to ensue. It should be evident from the above discussion that plaintiff's motion reflects, at the very least, an aggressive approach to a party's pre-litigation duty to preserve evidence. While the approach is not so lacking in basis for an expansion of the law that the motion itself warrants sanctions, the court would be remiss if it failed to express its reservations about plaintiff's apparent lack of inquiry concerning relevant facts prior to filing a motion seeking the most serious of sanctions.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED THAT** plaintiff's motion for sanctions [Doc. 7] is

---

[1]This opinion is not meant to imply that some type of formal notice of the likelihood of litigation must be received in every case before a duty to preserve evidence arises. In the case of an airline disaster, for example, the "trigger date" for the preservation of evidence clearly would be the date of the disaster, because of the high likelihood of litigation following such events. However, in many cases, notice and/or knowledge of the realistic threat of litigation will evolve more slowly, making the precise "trigger date" more difficult to determine. This opinion merely holds that on the facts presented, the "trigger date" requiring Walmart to preserve evidence arose well after March 10, 2008.

**denied.**

This 20th day of November, 2009.

Signed By:
**J. Gregory Wehrman**
**United States Magistrate Judge**